Your Honor, the second case of the morning is called 211-1277, Stephen Smola v. Greenleaf Orthopedic Associates, S.C. at all. And on behalf of the appellant, Mr. W. Randall Bowden. On behalf of the attorney, Mr. Michael Reeses. Mr. Reeses? Oh, pardon me, Mr. Bowden. Thank you, Your Honor. Yes. It's been a long time since I've been here. Please, Justice Hutchins and Justice McLaren. Justice Hutchins, it's nice to see you. Do I answer questions or recite the brief? What does W stand for? Pardon me, sir? What does W stand for? W was my natural father's name, William, for various reasons. Back in 1950, my mom decided after their divorce I would go by Randall. And I didn't even know that. It's amazing what you learned during his argument. I don't know that that's right. If it pleases Your Honors, I thank you for the opportunity to present our argument. And as I was reading this over with the West Next, or Next West, or Best of the West, or whatever they call it, I keep finding new ideas. As you know already, so I won't regurgitate Mr. Smola, who at a very late age is the victim of having some surgeries. And unfortunately, after his first rotator cuff surgery, and then Route 2, and then landing at the parking lot of his physical therapist, which is owned by the doctors, who own the parking lot of the building, he took one step down from his pickup truck at 7.30 when he was heading in for physical therapy. He parked 20 feet away, no one else, a little closer to the park. One step down he went, necessitating two subsequent rotator cuff surgeries, and he's at the end of the line. So what was the actual agreement that the parties entered into in the trial court that was confirmed? Thank you, Judge. The agreement, I had different exhibit numbers on it in our brief. It's probably the easiest place to find. That was contained in a letter that was drafted by the defense, and I can probably cite you to that. It's about a three-page letter, and it isn't very specific, but specific enough that I believe it's an agreement. They move these things from the, they tell me it's exhibit B, which we'll look at. So in our original brief, exhibit B, and you probably want me to have it at the record. What I noted about the agreement, if it please your honors, is it appears to be an agreement. And the verbiage, I think, is important. First, I don't think there's an issue that this case isn't governed by the parameters of the, what we like to call, Uniform Arbitration Act. I think the parties basically agree. Mr. Brown, as I understand it, I think the crux of the case is there's an issue as to whether or not you and the other side disagrees on whether or not an arbitrator can entertain a motion to reconsider after issuing its award. I mean, that's really the issue. Absolutely. It's your position that he can't, correct? In this case, under these circumstances, unless contracted is our position, yes, sir. And I think that's a plausible argument to make, but what about this Kalish case? Have you read that? Are you familiar with it? I can't tell you that I can't. You seem to stand for the proposition that you can't, but I don't know if it's controlling here, but that's what I wanted to know. Well, if it's the infamous Latin functus officio, I can't address that, I think. I look back, and of course, with what's next, we go back to 1863, because that's when those are very important. And actually, the history of that is quite fascinating. Very briefly, they wanted to expedite the litigation, and one of the processes would be by arbitration. But they didn't trust the arbitrator or arbitrators, it's literally in the materials I've read, as much as a judge. And so, therefore, the functus officio doctrine came into being, whereby once you make your final decision, you're not going to do anything else. And that was common law. But we cite in our materials that that common law doctrine, again, I picked it up in 1863, I have the case, if you want to see it, has been eroded and continually eroded. And it bottoms out, I think, to what the contract is between the parties, what the agreement is between the parties. And we have cases that we've cited, certainly, I think it's section 5, slash 1 of the Uniform Arbitration Act. If you've got a contract, the contract controls. I agree with you, Your Honors, that it's really a simple matter of interpretation of what the contract is, and that's why I go back to the letter. And I would take one little revisitation or run the tape back a bit to the order. As I ponder in this case, the order that dismissed the case in the trial court, which I never would have done, we didn't, it divested the court of any jurisdiction. It reserved but one thing, to affirm or whatever with regard to the arbitration. But it was an active case, so there's very limited powers. The case, in fact, was dismissed with prejudice. So we take that, and my thought is, by doing that, we're agreeing, no more court, no more depositions, motions, this and that, it's all going to Judge Walter. And then we look at the embodiment of the agreement, March 3rd, drafted by the defense, I think then leaning toward our direction, if you will. And it says, we have agreed to resolve this matter by way of binding arbitration. And we go on to that letter, which I think is very important. It says, Judge Walter will decide all permanent issues in this case, and then they use the word, including liability and damages. So I'm out there with the thesaurus figure now. So he's certainly not going to resolve just liability and damages, because it says including that. So liability and damages to me are a subset of what the entirety of it is. The fact that we're proffering to him the matter and all pertinent issues. So I think this agreement between the parties, which is all that we have under Section 5-1 of the Uniform Arbitration Act, is what we're living by. It doesn't specifically address that. But the Arbitration Act itself, it doesn't contain a provision, as I read it, providing for reconsideration of an award, but it also doesn't prohibit that either. Is that correct? It doesn't really address that specifically. That's absolutely correct. I think, though, in our thought, if I may, that 5-1 of the Arbitration Act, and maybe some of the following sections, if it's an arbitration contract in Illinois, you're looking at the parameters of the Uniform Arbitration Act, unless it is otherwise agreed by the parties. And I think all of the sites in that Section 5-1 in the annotations say, yeah, but they can agree to do this or that. Some of the agreements we've faced with the ADR, with the American Arbitration Association, are very precise. The arbitrator can decide, you know, was it raining on Thursday? We agree. Or as blanketed as this. Counsel, you indicated that you believe that the trial court was wrong in finding that the arbitrator's decision was final. Is that correct? Yes. Yes, Justice. How long would it take, in an optimum or an average or a median situation, for an arbitrator's decision to become final? Is it 30, 60, 90, 6 months, a year? What is your definition of when it's final, final? I think you have to go back, because I can't find anything in the Act to it being reasonable. There's time preclusions on when one should file a motion before the arbitrator. And Justice Walter made his decision, and within X, 3, 4, 5 days, it's in the record, we file. But to address your specific question, Justice McClaren, I don't know. And in this particular case, though, it seemed like Judge Walter was on a time frame. He accepted our motion to reconsider. He didn't reject it. He sent out a note for a briefing schedule. Well, what would have happened in this scenario? Yes, sir. What's your position in this scenario? Judge Walter renders a decision. Yes. The motion is sent out to have the decision confirmed by the trial court judge. The trial court judge has the case called, and there is no motion to reconsider. There's no mention of a motion to reconsider. The judgment is entered. And then the next day, you file a motion to reconsider before Judge Walter. Is that too late, or is that within time? Depending, again, fact-specific, looking at the basic agreement here. My initial reaction to that is you race to the recorder's office, and whoever gets the deed there first wins. So I suppose that's one argument. I didn't mention the recorder's office, so I'm not quite sure I understand. No, the race notice thing. Whoever gets to the courthouse first, that's over. But I think in that case, if it was me on there, I would probably say, well, they got to the trial judge with their motion, and we filed. In fact, our motion before Judge Walter was filed July 26, the same day that the defense filed their motion in the trial court. So it was kind of a tie at that point. Our position was that Judge Walter, in the cases we've cited, he has the first look at what's arbitratable and not. And in his mind, okay, here's the motion reconsidered. It didn't throw us out. They responded, albeit they had some objection, but they certainly responded. And that didn't affect Judge Walter. He said, all right, now, here's your briefing schedule and vote, and are you going to reply? I said, no. So we were in a time frame to finish up the arbitration. Could Judge Walter have decided, and he never got to that point because the trial court made a ruling, but could Judge Walter have decided that he did not have the ability to reconsider this matter based upon what everybody submitted? Under the cases, and I'm getting a little weak on memory, so I have them in here because I've read them, my understanding is that the arbitrator has the first look at what is arbitratable. So he could have decided right then and there, I'm not going to take another look at it, which he didn't. Well, but the fact that he told you to brief it, does that necessarily mean he was going to give you some sort of a substantive decision? No, because in his communiques to both sides, he said, you brief it, defense. He asked if I wanted to brief it, and he said, I'll let you know whether there's even going to be any more hearing whatsoever. So I think he had it well within his cognizance that he was going to do whatever he wanted to do with it. He didn't want to take another look at it. So what, I mean, if, and you say your memory's a little fading. In Kalish, the court said that while the act doesn't provide certain ability or doesn't provide any ability to reconsider, their basic holding was the parties agreed upon finality. Is there anything in this particular record that indicates that Judge Walter's decision was final? Did he say, this is my final decision? Did, you know, does the, does the agreement say when the arbitrator makes its decision, we will consider that final? Is there anything, is the word final anywhere? Well, the two things I think the most critical that we were looking at carefully is Exhibit C in our original brief, and in fact is the award, award by Judge Walter. It doesn't say final award, final decision. I suppose one could imply that. And, I mean, isn't it really entirely silent as to finality? It really doesn't specifically address finality, does it? Oh, absolutely not. But I think the verbiage, what were the parties deciding? One, the order dismissing the case dismissed it in its entirety. A better option, I think, or another option is, the court, we're going off to arbitration, you put the case on hold. Instead, the defense decided this case is dismissed with prejudice. We're done. It's over. All of that matter then, in my mind, in the way the agreement of March 3rd reads, is now proper to Judge Walter. And that's why they use such words as resolve this matter, not liability, not damages. In fact, it just goes down to a simplistic, it's nothing, it's probably simple, interpretation of contract. And the only thing precluding us, I think, here, roadblock or hurdle, is this fundus officio, which clearly, from everything I've read, it was made in 1863, and if there's no other provisions, but the contract governs. Section 5-1 of the Arbitration Act says, whatever you agree to, if you want to agree to one thing or the other thing or not, that's what you agree to. And as I mentioned briefly before, the other view in this was the American Arbitration Association. You get a 14-page agreement. The ADR in Chicago, you get a three-page agreement. We're not going to do this. We're not going to do this. And in the ADR in Chicago, they actually put, there is no reconsideration. There's no nothing. Do what you want. So I wrestled with that, Justice Hudson. It doesn't say specifically, but it's like the Constitution. It doesn't list, you know, what you do with yourself and so on. It spans everything. All issues. I looked up issues. Issues are issues of facts, issues of law, including liability and damages. So it embodies and embraces the whole context. Literally, we're taking the case from Judge Mullen and just proffering it to Judge Walter to decide the whole enchilada. In any event, under the facts, your motion to reconsider was pending when the trial court found that the arbitration award was filed in the budget, right? You had already filed your motion to reconsider. Yes, Justice. We filed them both at the same time. And as an aside, I would argue that the motion, I'm a little troubled with the language of the motion that the defense filed also, but they filed something in the trial court at the same time we did. But I think at that point, still rowing the boat was Judge Walter. He had it on his agenda to use the briefing schedule, I'm going to look at it, and let you know. Clearly, by not me guessing or the other side, it's the judge who said, I'm still rowing the boat, I'll let you know. And I think what we're looking for is justice and expediency. And if he wanted to take another look at his ruling to say, maybe there's something else in here, which I would ask, and I'm being a complete jerk, but I like the McLean case, which was a follow-up to another major case that was out of Waukegan, when the ingress and egress is different, the duty, with regard to a business owner than a landowner. And that's the way I read that, and I keep getting shot, there's comments that, well, those were icicles. Who cares if it's icicles, or if it's a half-inch corner. I'm not sure you're arguing the merits of the case, and I think that should be in front of the arbitrator. Are there any other questions? No, I don't have any. I just wanted to say one thing, because that's another infringement, I think, with respect to the trial judge, because she was looking, well, I don't see anything wrong on his face. You know, we weren't going at it that it has to be outside his face, although it is on his face, and we think there were errors. But she was making that decision, ultimately, which Judge Walter had not finished. Thank you. You'll have an opportunity to do so. Thank you so very much. Thank you. Good morning. May it please the Court, Counsel, my name is Mike Rieses, and I'm here today on behalf of the appellees. Good morning. We ask you to affirm the trial court for three reasons. First, the award was final and complete on the date it was rendered. Two, the plan presented no grounds for reconsideration that were recognized under the Uniform Arbitration Act. And three, no gross error of law appears on the face of the award. Can I ask a special question? Yes. Does either the Arbitration Act or the agreement of the parties in this case preclude, specifically, the filing of a motion to reconsider? Or is it silent on that issue? The agreement does not address the issue of what happens after the arbitrator makes an award, as he did here, on liability and damages. The Arbitration Act has very limited powers of review of an award that's final. Okay? And this motion made by the plaintiff didn't fall under the Act. Our position is very simple. If you don't have that power by an agreement between the parties that gave rise to arbitration, if it's not in the Act, and if it's not a judicially created exception to the Act, namely a gross error of law that's evident on the face of the award, you've got no grounds to go back and ask for a do-over. Well, he's arguing the opposite side of the point. You're saying there's nothing granting you the right to do that. He's saying, is he not, there's nothing that precludes me from doing it. Well, I think if you look at the cases cited in our brief, Kalish, but many cases going back to the 19th century, you have a common law doctrine I may mispronounce it, functus officio, that states that when the award is final, when the arbitrator has done his job, game over. And at that point, if you're going to have further proceedings, it has to be on some basis that authorizes the arbitrator. The arbitrator can only authorize, I'm sorry, yes? I'm looking at the language that I perceived was the agreement. It's in a much larger letter, but it says, it is understood and agreed to between the parties that the arbitrator will decide all pertinent issues in this case, including liability and damages. Yes. Now, according to some of the cases that we've looked at, you've looked at, Mr. Bowden has looked at, there are kind of terms, the broad language or the specific language. And pertaining to all pertinent issues in this case seem to fit in that broad language or generic provision where things like disputes arising out of, disputes arising out of or related to are considered broad or generic and give, could give the arbitrator additional authority that isn't otherwise prohibited by the act. Well, for example, I mean, I take it to mean that that would include everything leading up to a determination of the merits of the controversy. Let me give you an example in this case. All right. Tell me then, as you answer this question, disputes arising out of or disputes arising out of or related to,  than those clearly labeled generic broad language? I think our language, it is understood and agreed between the parties that Judge Walter will decide all pertinent issues in this case leading up to, including liability and damages, limits his authority to issues of fact, issues of law relating to liability, relating to all issues leading up to liability and damages. Let me give you an example. Okay. When we reached this agreement, we had a motion for summary judgment pending based on the actual accumulation rule. Plaintiff and the defendants reached an agreement to arbitrate. He made a motion to amend. He wanted to amend his complaint to a voluntary undertaking. Did the arbitrator have that power to decide that motion? Of course he did. All right. It related to liability and damages. It was before there was any final award made. He's got that power. He's got all the power necessary to reach the issues of liability and damages that the parties have submitted to him, including the right to interpret the law and apply the law to the facts. That's what the parties chose. But under the doctrine of functus officio, once he made a final award, and I will concede, I can't find anything in this three-page award where the magic word final is actually used by Judge Walter, but he said the controlling issue in this case, if I can be permitted to read for just a second, is whether on the facts presented either defendant is liable for injuries caused by the plaintiff's fault. Then the judge made very detailed findings in seven paragraphs, findings of fact, findings of law. And then he says, wherefore an award is entered in favor of each defendant against the plaintiff. Does he say that's final? No. He compliments the lawyers on resource efficacy, signs the award, that's it. Plaintiff has never argued that there was anything left unresolved as of the date that award was entered, signed by Judge Walter on July 8, 2011. His basis is that the judge misapplied the law, specifically McLean versus Rockford Country Club. That's his argument. Shouldn't the trial or shouldn't the arbitrator have an opportunity to decide, especially since the trial court was out of this case, but for it to enforce? Yes. Shouldn't the arbitrator have an opportunity to decide if he or she committed a gross application of McLean? Your Honor, the courts that have recognized this exception stated in terms of what a court does, not what the arbitrator does. What the courts have said, and we've cited the cases, it's not any mistake of law. It's not a mistake as far as a misstatement of how the law is. It has to be such a big mistake that if the arbitrator had been apprised that the award would have been different, and it's phrased in terms of what a court is doing after the fact. And I would submit that it is a court, in this case, the trial court, who retained the power to enforce the award by virtue of the order that set the matter to arbitration. To decide whether it's a gross mistake on the face of the award or not. By the way, I was just going to say, if the judge was wrong, I'm sorry, not the judge, if the former judge was wrong in his legal reasoning, that would not be a gross mistake. Doesn't he have the right to make, since he allegedly made it, doesn't he have the right to say, I made a mistake, or, and we don't know that he wouldn't have said, because we chopped this off at the knees, he might have said, I didn't make any mistakes. Over. Final. Your Honor, I think the problem with it, and you know, on its face, I'd say, well, you know, that sounds reasonable, right? I mean, anybody can be wrong. That's why we have courts of review. That's why we even have courts above courts of review. So, on its face, you'd say, gee, that sounds awfully reasonable. But I think that what the courts have recognized is that there is deference paid to the parties as far as their choice. And their choice is to go to arbitration. And they entrust an arbitrator with one caveat. Once the arbitration process is concluded with an award, with an award, that's the end of it. The arbitrator did his job as of July 8th. And while it might seem reasonable to you, or to me, or to counsel to say, well, you know, Judge Walter is a very fair-minded man. He was a judge for a long time. He's used to, you know, listening to two sides and he could say he was wrong. He could even say he was wrong for a very big reason that was evident on the face of the award. I don't see it. And, but, but that's not the point. I understand that. But I'm just saying I don't see, but, but, but somebody has to make that, as you said, Justice Hutchinson, somebody has to make the determination whether or not after the award was final, whether there's a gross error on the face of the award. There is nothing in the agreement that gave him that power. There is nothing in the act that gave him that power. There's nothing in the act that even talks about a misapplication of law. All we have are cases. And those cases talk about a severely limited judicial review, judicial review, and the review is limited to a gross error of law. To me, that says once the arbitrator does his job, the arbitration process has concluded, and unless you can, the losing party can come up with a reason that is enumerated in the act, or, which I think is even a more difficult test to meet. A gross error of law, that's it. And even if the arbitrator had second thoughts, even if the arbitrator thought, maybe on a different day I could decide this case differently, that would not be good enough. Counsel, earlier you alluded to the Kalish case as controlling. However, isn't Kalish distinguishable in the sense that, in that case, in holding it, the plaintiff could not file a motion to reconsider with the arbitrator. The court in Kalish emphasized that the parties bargained for finality. We don't have that here, and this whole thing probably could have been avoided if finality was addressed in the agreement. Well, your Honor, I mean, I don't see anything, you know, with 20-20 hindsight you can always say, maybe the agreement could have been written to say, and once the award is final, the, the decision is made. Okay? Why couldn't it have just said, when the decision is made, the parties will consider that a final decision? It doesn't have to be, we don't need to use Latin. Why couldn't it be simple? This letter actually is pretty simple, but for the fact it doesn't, it uses some really broad generic language. But it, but my point is that I think that broad generic language only leads up to liability and damages. And at that point, I think it cuts it off. That's why he's got the, every right to make a motion to amend, not in front of Judge Mullen, but in front of the arbitrator. Okay? I, I, fine. But, hey, once, once the award is made and there is nothing left unclear, you know what, if this award was somehow vague or unclear, obviously, there would be a basis to go back. The Act recognizes that. You don't even need the permission of the judge to go back if it's, if it's, if it's vague or unclear. There's nothing about this that was left open. There was nothing about this that was unresolved as of the date it was written. The judge thought it was over. He enters an award in favor of each defendant, compliments the parties, signs it and dates it. What else is left? The motion to reconsider is... Well, what's left after a final judgment that's been entered in the trial court? That's a great, that's a great question except, as the courts have said time and time and again, arbitration is not adjudication. It's not litigation. It's an alternative to litigation. The parties bargain for an arbitration because it is thought to be more cost effective and they're going to get a resolution faster. Not in this case perhaps, but that is at least the theory. One of the principles of  court is to try and allow the trial court the opportunity to address its alleged errors and resolve them or clarify them such that maybe appellate review is unnecessary or, if necessary, expedited. That principle seems not to be applied in the rationale that you make relative to the case. You wish to make this thing final and not give the arbitrator the opportunity the trial courts are given to address and, if necessary, correct their errors. So when we talk about a simplistic solution, a shortcut, something that's supposed to be cost effective, your argument doesn't seem to be in agreement with the basic premise of let the trial court decide or let the fact finder or the determiner decide first whether or not it submitted errors. What is your response to that? The legislature made a choice here. They enacted the Uniform Arbitration Act. That is a strong evidence that the motion is to be recognized only in extreme instances and there is a judicial review that goes to the court. The court gets to decide if there was something so apparent on the face of the court. But obviously when the notice of appeal came in, I had to talk to my client for a half hour and try to explain to them that just because they went to arbitration doesn't mean they wouldn't wind up in the appellate court. They couldn't believe that this could happen. If someone is a zealous advocate and wants to take it as far as he can, there isn't any argument on the face of the earth that is going to stop him. Not even 375? Well, not even 375. I think I've read some cases where that's been wielded. But we're not, you know, we're not there. I'm not taking it. I don't mean to suggest that. I'm just saying that the motion was not recognized under the act. The award was final. And the case law does not allow for the arbitrator to have a do-over just because the motion is applied for. The judge made the correct call. We ask you to affirm. But let me ask  question because it's been a long time since I've been in a trial court. When cases go to arbitration, does the trial court have the full power of the trial court to make substantive decisions? Honestly, I've seen it done both ways. Usually there is a I shouldn't say usually. Okay. I've seen it done both ways. The order is usually carved out to state that the court has the power to adjudicate liens, for example, if there was going to be an award of damages, and to enforce the award. Because certainly the parties are going to agree to submit everything to the arbitrator. They want to make sure it's not a nullity because then the judge can enforce the terms of the award, which is all we ask for in this case. But the three issues that you identified, especially the gross error of law, would that be considered a substantive would finality, gross error of law be considered and ability or authority in the act, would those be considered substantive issues, which are within and according to most of the case, all substantive issues fall under the arbitrator's power to decide, as in the motion to amend. It didn't go to the trial court for that purpose. It was the arbitrator who decided that. Why is that different than was my decision final, was there a gross error of law, and what does the act say I can do? Aren't those all substantive? The way I would answer this, I would say it is substantive as far as what powers he has through the date he makes his award. Number one, okay, so he's got the power to decide whether to make a motion to amend because that goes through the date of the award. He gets to decide everything that is necessary to his award, and that would include liability and, if the occasion arises, damages. But once he has decided, and that's what I'm talking about substantive, once he's made the decision and he's decided everything, that's when it becomes final. At that point, on July 8th, it isn't like a bench trial under Section 2, 1203, which I think I also cited at some point, cases involving Section 2, 1203. It becomes final at that point, and then if we're going to talk about other proceedings to try to get a relief from the award, that is very, very limited. It's either by virtue of the agreement, and there's nothing here that, okay, we've been down that road, but you know where I'm going with that. There's nothing in the Act. And I think the fact that there's nothing in the Act that even recognizes this type of motion should make it very, very reluctant for a court to now create a new exception. Because I'll tell you what, if you publish an opinion on this, it gives counsel the right to make motions. You know, it'll be another day of proceedings in front of the arbitrator, I guess, because now if somebody doesn't like the result, and it will just be like a post-trial proceeding. You seem to forget that if the agreement says that there shall be no motions subsequent to the award or the decision rendered, then it would seem that the contract between the parties, despite what the Act says, would say that the motion should be denied whether or not it is actually presented or whatever. I hear what you say, but I guess the problem I'm having is that, or at least my response would be that we already have, this agreement has to be construed in the context of what the law is. And the law already recognizes something called functus officio. And I think that if you interpret the agreement in light of what the law is, that while maybe you can cross every T or suspenders with your belt, I don't know that there would be, that it's necessary to go as far as the agreement is to spell out contingencies that could arise subsequent to the entry of an award that is final on its face. If there are no further questions, mindful that oral argument is a privilege and not a right, we ask you to affirm. Thank you. » Mr.  » Mr. Bowden.  you. » Mr.  » Thank you. » Thank you. » Mr. Bowden. » Thank you. » Just in the amplification of what justice McCrary was discussing moments ago, the arbitration act, section 5 slash 1, very precise about contracts. And the cases interpreting them, on and on, one of them, and we cited that Schultz versus Atlantic mutual insurance at 367 ILAP third 1, and    as an agreement between the parties. That whole section under no. 2 seemingly says that's what we must follow, the agreement between the parties. And in this case we have an agreement and I could be laboring, but I think it's interesting the fact that when we went to the trial court, the defense said everything is gone, the case is dismissed, and I beg to differ with counsel, I've not had a case in my life in 30 years where you don't want the court dying on because something may go awry. Here we didn't. The court said I don't have the case anymore. And then the verbiage used in that March agreement drafted by the defense, all issues including liability, including damages, it embodies all enchilada. And again, the process was still the cases I see, the decision as to what issues to arbitrate and how to interpret the agreement lie first, although they might ultimately be incorrect. With that arbitrator, Judge Walter obviously said I got this motion to reconsider, I'm setting a briefing schedule, they responded, Bowdoin, do you want to respond? No. We're along that line. And the judge said, I'm not by allowing this, saying I'm going to reverse it, I'm going to take another look at it, which is all he was going to do. And someone up here used the verbiage I like, the trial court, with respect to Judge Bowdoin. That's it. And then it fits into the plan. It was Justice Hutchinson who said that. I believe it was. Not Justice No, I came close, but I didn't really say it. Just for fun, I know, to pay for what's next, it's, I think, Bain versus Morris is a 68 U.S. 97 case, ever popular from 1863. It seems like that's what... Fresh authority then. Pardon me? 1863, very fresh authority. Yes, and it has not been, it has been, I think that's the first thing I could say. I don't know what the second  is. I  know what the third thing is. I don't know what the fourth thing is. I don't know what the fifth thing is. I don't know what the sixth thing is. I don't know what the seventh thing is. I don't know what the eighth thing is. I don't know what          tenth thing is. I don't know what the eleventh thing is. I don't know what the twelfth             know what the eighteenth thing is. I don't know what the twelfth thing is. I don't know